# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GEORGE MORRIS, | § | |
| | § | |
| | § | Civil Action No. 4:15-CV-724 |
| v. | § | (Judge Mazzant/Judge Nowak) |
| | § | |
| COPART, V4V1 VEHICLES FOR | § | |
| VETERANS. | § | |

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On September 22, 2016, the report of the Magistrate Judge (Dkt. #52) was entered containing proposed findings of fact and recommendations that Defendant Copart's Motion for Summary Judgment (Dkt. #31) be granted. The Magistrate Judge recommended Plaintiff's claims against Defendant Copart be dismissed in their entirety (Dkt. #52). Having received the report of the Magistrate Judge (Dkt. #52), having considered each of Plaintiff's timely filed objections (Dkt. #54), Defendant's response (Dkt. #57), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and the Court hereby adopts the Magistrate Judge's report (Dkt. #52) as the findings and conclusions of the Court.

## BACKGROUND

Plaintiff is the owner of telephone number 972-943-9799, which is registered on the federal do-not-call list. In 2015, Plaintiff received a number of calls to that number; these calls form the basis of Plaintiff's suit. Plaintiff alleges Defendant Copart ("Defendant" or "Copart") violated the Telephone Consumer Protection Act ("TCPA") by contacting him on his telephone

number. Plaintiff asserts two types of TCPA claims against Copart: (1) use of an automatic telephone dialing system and/or artificial or prerecorded voice, 47 U.S.C. § 227(b)(1)(A)-(B) ("ATDS Violations"); and (2) making a telephone call to a number on the national do-not-call list, 47 C.F.R. § 64.1200(c) and 47 U.S.C. § 227(c)(5) ("DNCL Violations"). The underlying facts related to Plaintiff's claims are set out in full detail by the Magistrate Judge, and need not be repeated herein in their entirety (*see* Dkt. #52). Accordingly, the Court now sets forth only those facts pertinent to Plaintiff's objections.

On August 5, 2015, Plaintiff received a call from an entity with caller ID "DONATE THAT CAR." Plaintiff allegedly answered the call, and an automated message asked Plaintiff to donate a vehicle. Plaintiff gave a positive response, informing "Donate That Car" (an alleged alias of Vehicles for Veterans ("V4V1")—an unserved defendant in this case) that he desired to donate a vehicle. Plaintiff did not, in fact, have a vehicle to donate, and admits that the vehicle he expressed interest in donating was non-existent and/or imaginary. Plaintiff proceeded to schedule a time for the donation. Plaintiff alleges he provided this false information to find out who was responsible for making the calls to his telephone number.

Thereafter, on August 6, 2015, Copart contacted Plaintiff at telephone number 972-943-9799 to arrange the pickup of Plaintiff's imaginary vehicle. Copart is in the business of assisting third parties with the pickup, sale, and auction of property, including vehicles. Copart avers that it was contacted by V4V1, which requested to arrange the pickup and sale of Plaintiff's vehicle. Copart further avers that V4V1 supplied it with Plaintiff's contact information. Copart admits that the August 6, 2015 call with caller ID "Copart" was, in fact, made by Copart. During the call, a Copart representative "verified" information previously provided by Plaintiff to V4V1 during the August 5, 2015 call (such as the vehicle and address

information).  It is undisputed that Copart initiated the August 6, 2015 call to Plaintiff; however,

Copart denies directly making any other phone calls to Plaintiff.  Further, Copart has submitted

affidavit testimony, through its General Counsel Paul Styer, that:

> Copart is not utilizing any of the aliases or d/b/a identities suggested by Plaintiff
> [(V4V1, Donate That Car, J Sylvestre Car, NRTH TX Salvage, A&S Tow, Frank
> Tovr, Tony&Sons)]. . . . Copart does not solicit individual consumers. Copart
> does not utilize automatic telephone dialing systems. Copart does not use
> prerecorded messages in its outgoing communications.

The Magistrate Judge entered a report and recommendation on September 22, 2016,

recommending Defendant Copart's Motion for Summary Judgment be granted (Dkt. #52).

Specifically, the Magistrate Judge recommended that the Court find as follows: (1) Plaintiff's

claims as to all calls, other than the August 6, 2015 call, be dismissed against Copart because

Plaintiff failed to show Copart initiated any other call; (2) Plaintiff's ATDS claim as to the

August 6, 2015 call be dismissed because Copart did not utilize a pre-recorded message or

automatic dialer; and (3) Plaintiff's DNCL claim as to the August 6, 2015 call be dismissed

because Copart did not initiate a telephone solicitation.  Subsequently, on October 6, 2016,

Plaintiff filed his objections to the Magistrate Judge's report and recommendation (Dkt. #54).

On October 20, 2016, Copart filed its Response to Plaintiff's Objection to Magistrate Judge's

Recommendation (Dkt. #57).  The Court has reviewed the objections asserted by Plaintiff and

considers each herein.

## PLAINTIFF'S MOTION TO SUBPOENA

Before turning to Plaintiff's objections, the Court first addresses Plaintiff's purported

"2nd Motion to Subpoena V4V1's address," referenced within Plaintiff's objections

(Dkt. #54 at 2).  Plaintiff, in his objections, asks the Court to "issue subpoenas seeking registrant

information for 214-416-8200 AND 702-728-3333, [and/or] . . . upon Inc Paradise &

Eastbiz.com Inc to release all paperwork related to their client 'V4V1' or 'V4V1 Vehicles For Veterans' or 'Vehicles for Veterans'" (Dkt. #54 at 9). Plaintiff has not properly requested such subpoenas. The standards and procedures for the issuance and use of subpoenas are provided in Rule 45 of the Federal Rules of Civil Procedure, and Plaintiff is directed to refer to that rule in the event that he seeks to obtain documents or testimony by subpoena. Fed. R. Civ. P. 45; *see also Calpito v. Zaleski*, No. CIV.A. SA-10-CA-1017, 2011 WL 1322170, at *2 (W.D. Tex. Apr. 7, 2011). The Court also notes the discovery period in this case has long since closed; Plaintiff's request is untimely (*see* Dkt. #11; Dkt. #40). Accordingly, Plaintiff's "2nd Motion to Subpoena V4V1's address" is denied.

In addition, Plaintiff once more argues that the burden of locating V4V1 rests with Defendant Copart and that Copart is required to provide Plaintiff with an address at which V4V1 may be served. Plaintiff states he has "run up large expenses and gone to extraordinary lengths in multiple attempts to serve [V4V1] summons, precipitated by Defendant Copart's failure to provide a valid and serviceable physical address" (Dkt. #54 at 2). It is Plaintiff's responsibility—not Copart's—to find a current address for V4V1.[1] It is Plaintiff's responsibility to find a current serviceable address for Defendant V4V1 and serve process in compliance with Rule 4(m) of the Federal Rules of Civil Procedure. *Clark v. ASC Mortg.*, No. 3:14-CV-4236-M, 2015 WL 3632562, at *2 (N.D. Tex. June 10, 2015) (citing *Hancock v. Cothern*, Civil Action No: 3:10–CV–173–LRA, 2010 WL 4665567, at *2 n.12 (S.D. Miss. Nov. 9, 2010) (advising plaintiff that it was his "ultimate responsibility to find a current address for [the defendant]" and

---

[1] Though it is under no obligation to find V4V1's service information, Copart avers that it has provided Plaintiff with "all contact information it could locate for V4V1, including a contact name, last known telephone number, last known mailing address, and last known e-mail address for the charity" (Dkt. #57 at 4).

that "[t]he failure to have [the defendant] served may result in the dismissal of the Complaint against him")).

## ANALYSIS

Under the law, a party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b)(2)-(3). Plaintiff's objections state that "either Copart has imagined V4V1 into existence and Copart made the calls at issue in this case, OR a business relationship exists between the company that placed calls #1 through #7 & #20-#24[2] and the company that dispatched drivers to pick up a non-existent and/or imaginary vehicle that was conjured into being during those calls. No other reasonable explanation exists for Copart making the [August 6, 2015] call that they acknowledge making, and any juror would see that both situations lead to the same legal result—the liability of Copart and any other parties involved in placing or delegating calls to be made to a number on the Do Not Call list." (Dkt. #54 at 4). Plaintiff thus seemingly argues, by way of his objection, that Copart either made and/or initiated all of the subject calls itself or directed some other party to make the calls, for which it is liable. Plaintiff point to three pieces of "new evidence"— (1) a call log; (2) audio recordings; and (3) "Lot Notes"—in support of his objection (Dkt. #54 at 2-3, 5), asserting this evidence clearly demonstrates Copart committed both an ATDS and/or a DNCL violation in this case.

### I. New Evidence

To reiterate, Plaintiff purports to present three pieces of new evidence to the Court: (1) a call log Plaintiff alleges reflects an additional call by Copart on August 11, 2015 ("Call

---

[2] *See* the Magistrate Judge's report and recommendation for a complete listing of the calls the subject of Plaintiff's suit (Dkt. #52 at 3).

Log") (Dkt. #54 at 13); (2) audio recordings "demonstrat[ing] that recorded messages were used by someone (whether Copart or a third party) to initiate many of the calls at issue" (Dkt. #54 at 5); and (3) "Lot Notes" describing what Plaintiff characterizes as a business relationship between Copart and V4V1 ("Lot Notes") (Dkt. #54 at 14-21). Plaintiff attached both the Call Log and Lot Notes to his objections; however, Plaintiff has not provided the Court with the referenced audio recordings.

When a party presents new evidence for the first time in objections to a magistrate judge's report and recommendation, it is within the district court's sole discretion whether to consider such newly presented evidence. *Cheatam v. Blanda*, No. CIV.A 1:08-CV-299, 2010 WL 2209207, at *1 (E.D. Tex. May 27, 2010) ("[T]wo important judicial imperatives clash: the need to bring litigation to an end and the need to render just decisions on the basis of all the facts."). In exercising such discretion, the district judge may consider: (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted. *Id.* (citing *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003)). Notably, none of the referenced pieces of "new evidence" were cited or attached to Plaintiff's Response to Defendant's Motion for Summary Judgment and no explanation for such failure has been provided (*see* Dkt. #35). Moreover, here, the Magistrate Judge provided Plaintiff multiple opportunities to plead facts sufficient to establish his claims, including permitting two amended complaints and supplemental briefing on the summary judgment motion after hearing. Plaintiff, prior to asserting his objections to the Magistrate Judge's report and recommendation, failed to present the "new evidence," despite several

opportunities to do so (Dkt. #54 at 3). These facts weigh against considering the new evidence. *See Cheatam*, 2010 WL 2209207, at *1.

### A. Call Log

In addition, Plaintiff does not appear to have previously produced the Call Log to Defendant. The Call Log is an email dated August 11, 2015, notifying the recipient of a call from "9722639852 – COPART INC" (Dkt. #54 at 13). The recipient phone number is not identified in the Call Log (Dkt. #54 at 13). Defendant specifically avers that "Plaintiff has not provided any . . . 'call logs' to Copart or this Court as evidence of his claims" (Dkt. #57 at 7). The Court cannot consider evidence that was not produced in discovery. *Gilles v. Pleasant Hill Elementary Sch. Dist. No. 69*, No. 09-1335, 2011 WL 5005995, at *3 (C.D. Ill. Oct. 20, 2011) ("The law is very clear: evidence that was not properly produced during discovery cannot be used to support or oppose summary judgment.").

### B. Audio Recordings

Turning to the alleged audio recordings, Plaintiff alleges the "audio recordings and call logs . . . clearly demonstrate that recorded messages were used by someone (whether Copart or a third party) to initiate many of the calls at issue," constituting an ATDS violation under section 227(b) (Dkt. #54 at 5). Copart disputes having ever received any audio recordings (Dkt. #57 at 7); the Court also does not have a copy of the audio recordings Plaintiff claims to exist. The Court cannot consider evidence that is outside of the summary judgment record. *See Gilles*, 2011 WL 5005995, at *3.[3]

---

[3] Also important to the analysis herein, Plaintiff alleges generally in his Second Amended Complaint that the calls at issue used recorded messages (Dkt. #24 at 4). However, once Defendant makes a properly supported motion for summary judgment, Plaintiff must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Marshall v. Bank of Am.*, No. 4:13CV113, 2014 WL 12561626, at *3 (E.D. Tex. Feb. 14, 2014), *report and recommendation adopted*, No. 4:13CV113, 2014 WL 12576782 (E.D. Tex. Mar. 28, 2014). The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. Tex. Local R. CV-56(d).

### C.  Lot Notes

Unlike the Call Log and the alleged audio recordings, the Lot Notes were produced during discovery.  Plaintiff has previously referenced the Lot Notes in his filings to the Court and has also now provided a full copy of the same to the Court (Dkt. #47; Dkt. #54 at 14-21).  The Lot Notes bear on Plaintiff's argument that "Copart is either working in concert with an entity operating under the name 'Vehicles for Veterans' [sic]' or is, itself, masquerading as such an entity" (Dkt. #54 at 4).  Given Plaintiff's *pro se* status, notwithstanding that the factors weigh against it, the Court will consider the Lot Notes in connection with its review of Plaintiff's objections.

## II.  Plaintiff's Objections

### A.  Whether Copart Initiated or Directed the Calls

Plaintiff objects to the Magistrate Judge's findings and conclusions that Copart did not initiate or have any involvement in the calls to Plaintiff the subject of this suit, other than the August 6, 2015 call.  Specifically, Plaintiff argues that Plaintiff's claims against Defendant Copart cannot be dismissed because Defendant Copart either operates V4V1, and thus directed all of the calls, or has some business relationship with the companies that placed the calls (Dkt. #54 at 2-3).  Plaintiff's belief is based upon Copart's prior disclosure of the aforementioned "Lot Notes" for the pickup of Plaintiff's imaginary vehicle, which Plaintiff asserts reflect the existence of a contract between Copart and these other entities and/or indicate some other

---

Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy Plaintiff's burden.  *Marshall*, 2014 WL 12561626, at *3.  The alleged audio recordings are the only evidence advanced to support Plaintiff's generic assertion that recorded messages were utilized to initiate many of the calls at issue.  Thus, Plaintiff's allegation remains wholly unsupported by record evidence, which is not enough to satisfy Plaintiff's burden.  Moreover, Defendant's evidence that recorded messages were not used remains uncontested (as discussed more fully in section III(a) *infra*).

responsive document has been withheld by Copart in discovery (Dkt. #47 at 1-2; Dkt. #54 at 3-4).

More specifically, the Lot Notes indicate that Lot# 29562915, consisting of an "05 Ford F-150 UK," was assigned to Copart on August 5, 2015, at 9:15 a.m. Central Time (Dkt. #54 at 14). The seller of the vehicle is listed as "V4V1 Vehicles 4 Veterans" (Dkt. #54 at 14). This "assignment" occurred after the August 5, 2015 call at 8:43 a.m. where "Plaintiff told [V4V1] that he had a (non-existant [sic]) vehicle available for donation and set up a time to find out who was making the calls" (Dkt. #24 at 4). The Lot Notes further indicate that on August 6, 2015, Copart spoke to a "Geroge Barr" (presumably a false name supplied by Plaintiff) verifying the address for picking up the vehicle (Dkt. #54 at 18). Again, it is undisputed Copart made the August 6 call (Dkt. #31 at 2; Dkt. #48). Several days later, on August 12, 2015, the Lot Notes reflect Copart received the following information: Plaintiff "CALLED IN STATING HE NEVER HAD ANY INTENTION ON DONATING VEHICLE, THAT IT WAS ALL A JOKE. ADJUSTER REQUESTED FOR LOT TO BE CANCELLED" (Dkt. #54 at 20).

### i. *August 6, 2015 Call*

Plaintiff argues the Lot Notes "clearly prove that Copart is either working in concert with an entity operating under the name 'Vehicles for Veterans' [sic]' or is, itself, masquerading as such an entity" (Dkt. #54 at 4). The Court disagrees. The Lot Notes cut against Plaintiff's assertion that Copart directed V4V1 to call Plaintiff. The Lot Notes, consistent with the remaining summary judgment record evidence, reflect that Copart was engaged by and/or assigned by another entity to pick up Plaintiff's vehicle after Plaintiff informed V4V1 he desired to donate a vehicle (Dkt. #54 at 18). On August 12, 2015, the "lot" was canceled after information was received that Plaintiff never intended to donate a vehicle (Dkt. #54 at 21). In

determining whether there is a genuine issue for trial, the Court must view all facts, and the inferences to be drawn from them, in the light most favorable to Plaintiff. *Montano v. Orange Cty.*, No. 1:13-CV-611, 2015 WL 11111479, at *3 (E.D. Tex. Jan. 20, 2015). The Lot Notes do not show, as Plaintiff argues, that Copart directed V4V1; rather, the notes support Copart's evidence that Copart contacted Plaintiff on August 6 only after being engaged to coordinate pickup of the vehicle at another entity's request.[4] As such, the Court holds that the findings and conclusions of the Magistrate Judge regarding the August 6, 2015 call are correct and will be adopted as the findings and conclusions of the Court. Summary judgment is appropriate on Plaintiff's claims against Copart related to the August 6, 2015 call. The Court further finds that Copart is not V4V1, nor did Copart direct the calls Plaintiff received from Donate that Car (the alleged alias of V4V1), and summary judgment is also appropriate on Plaintiff's claims against Copart related to those calls placed by DONATE THAT CAR (V4V1): April 1, 2015, April 17, 2015, May 6, 2015, May 26, 2015, June 12, 2015, July 13, 2015, August 5, 2015, August 31, 2015, September 11, 2015, October 4, 2015, December 9, 2015, and January 2, 2016.[5]

---

[4] Moreover, Plaintiff has brought forth no other evidence to contradict the (1) Affidavit of Paul Styer, Copart's General Counsel; (2) Domestic Entity Corporate Organization Sheet; and/or (3) list of ID names, aliases, or d/b/a's under which Copart has performed business from January 1, 2015 to the present. Plaintiff adduces no affirmative evidence, other than his own personal belief and speculation, to support his bare assertion that Copart has provided incomplete responses to the discovery and show that Copart is V4V1 or that a business relationship, that would subject Copart to liability, existed between Copart and V4V1. *Harvey v. Carrabba's Italian Grill, LLC*, No. 1:14-CV-663, 2016 WL 3460776, at *2 (E.D. Tex. May 19, 2016) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence."). Plaintiff's unsubstantiated assertions and unsupported speculation are incompetent summary judgment evidence and do not raise a genuine issue of material fact. Accordingly, the Court overrules Plaintiff's objection as it relates to Plaintiff's assertion that Copart directed V4V1 or is itself V4V1. However, Plaintiff's claims against V4V1 related to the calls alleged are not the subject of this memorandum and are not dismissed as to Defendant V4V1.

[5] These calls are listed as calls #1-#7 and #20-#24 in the Magistrate Judge's report and recommendation (Dkt. #52 at 3).

## ii. *Remaining Calls*

Turning to the remaining calls, the Lot Notes further reflect that subsequent to August 6, 2015, additional calls were made to Plaintiff by entities that, while separate or distinct from Copart, may have been acting under Copart's direction and/or to assist Copart in picking up the vehicle. Indeed, drawing all inferences strongly in favor of Plaintiff, the Lot Notes seemingly indicate that those calls from each of (1) J SYLVESTRE CAR or J SYLVE9STRE CAR 817-504-6171 (three calls on August 10, 2015 at 1:35pm, 1:36pm and 1:47pm); (2) NRTH TX SALVAGE 972-263-0877 (August 10, 2015 at 1:50pm); (3) UNAVAILABLE 800-824-9392 (August 11, 2015 at 10:42am and 10:56am); and (4) Cell Phone TX 469-774-4119 (August 11, 2015 at 4:05pm and 5:42 pm, and August 12, 2015 at 11:37am, 1:19pm and 1:19pm) (Dkt. #24 at 4-5) were made for the purpose of scheduling pickup of Plaintiff's imaginary vehicle—the service Copart was engaged by V4V1 to complete (Dkt. #54 at 14-21).

To outline again, in his Second Amended Complaint, Plaintiff complains of an August 5, 2015 call by Donate that Car (V4V1) during which he advised the caller he had a vehicle to donate (Dkt. #24 at 4). The next call Plaintiff complains of is admittedly from Copart on August 6, 2016 (discussed more fully *supra*) (Dkt. #24 at 4). Plaintiff then complains of calls placed to his number on August 10, 2015 (the first day the imaginary vehicle was cleared for pickup, according to the Lot Notes (Dkt. #54 at 19)) through August 12, 2015 (the last day an entity under Copart's direction attempted to pick up the vehicle before Plaintiff stated he had no intention to donate a vehicle (Dkt. #54 at 20)).[6] The Lot Notes contain entries that correlate to those calls complained of in Plaintiff's Second Amended Complaint (Dkt. #54 at 19;

---

[6] These calls are listed as calls #8-#19 in the Magistrate Judge's report and recommendation (Dkt. #52 at 3).

Dkt. #24 at 3-5). Indeed, the dates of the calls in Plaintiff's Second Amended Complaint match those listed in the Lot Notes from August 10 to August 12. The relevant Lot Note entries show the calls from J SYLVESTRE CAR or J SYLVE9STRE CAR, NRTH TX SALVAGE, UNAVAILABLE, and Cell Phone TX were each made for the purpose of scheduling pickup of Plaintiff's imaginary vehicle (Dkt. #54 at 14-21). An August 7, 2015 Lot Note entry reflects that "Driver Frank Tovr [was] dispatched for pickup [of the imaginary vehicle] on [August 10, 2015]," and a subsequent entry also dated August 10, 2015 (the date Plaintiff first complains of a call after Copart's August 6, 2015 call) reflects an "incoming call from driver stating that he could not get a hold of owner. Tried calling owner myself and had to leave message on voicemail" (Dkt. #54 at 19). The August 10, 2015 Lot Note entries reflect that the calls Plaintiff received on August 10, 2015 were made for the purpose of arranging pickup of the vehicle.[7] Similarly, an August 11, 2015 Lot Note entry indicates someone "spoke with owner Geroge Barr and he stated that the vehicle is cleared for pickup" (Dkt. #54 at 20). This August 11, 2015 Lot Note entry reflects the calls Plaintiff received on August 11, 2015 were made for the purpose of arranging pickup of the vehicle.[8] Finally, other Lot Note entries dated August 11, 2015 dispatched Driver A & S Tow and Tony&Sons for pickup of the imaginary vehicle on August 12, 2015 (Dkt. #54 at 20). The calls Plaintiff received on August 12, 2015 were thus also made for the purpose of arranging pickup of the vehicle.[9] Again, taking all inferences in the light most favorable to Plaintiff, the calls to pick up the vehicle placed between August 10, 2015 and August 12, 2015 and reflected in the Lot Notes produced by Copart may have been placed at the direction of Copart or on behalf of Copart who had been engaged to pick up the vehicle. The

---

[7] These calls are listed as calls #9-#12 in the Magistrate Judge's report and recommendation (Dkt. #52 at 3).

[8] These calls are listed as calls #13-#16 in the Magistrate Judge's report and recommendation (Dkt. #52 at 3).

[9] These calls are listed as calls #17-#19 in the Magistrate Judge's report and recommendation (Dkt. #52 at 3).

FCC guidance implementing the TCPA provides that: "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 (1995). Therefore, calls placed by an agent, such as a third party call center or contractor, of a telemarketer are treated as if the telemarketer itself placed the call. *Id.* As such, the Court will assume *arguendo* for purposes of fully considering Plaintiff's objections that Plaintiff may be able to clear the initial threshold inquiry regarding whether Copart initiated or directed more than one call (as it relates to the calls Plaintiff received between August 10 and August 12), and will proceed to analyze the remaining individual elements of each of Plaintiff's ATDS and DNCL claims as to the calls Plaintiff received between August 10 and August 12.

### B. ATDS or DNCL Violations as to Calls Received From August 10 to August 12

Plaintiff objects to the Magistrate Judge's finding and conclusions that the calls Plaintiff received from August 6, 2015 to August 12, 2015 did not constitute ATDS or DNCL violations. Specifically, Plaintiff argues that Plaintiff's claims against Defendant Copart cannot be dismissed because he supplied audio recordings to Copart evidencing the use of recorded messages (an ATDS violation) and Copart engaged in telephonic solicitations without his previous invitation or permission (a DNCL violation) (Dkt. #54 at 5-6).

### i. ATDS

The FCC imposes liability for violations of § 227 where the telephone used to make the call to the consumer has the capacity to be used as an automatic dialing system, even if it is not so used during the call at issue. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015) (The FCC states that "dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers, and thus

meets the TCPA's definition of 'automatic dialing system,' even if it is not presently used for that purpose, including when the caller is calling a set list of consumers."). To survive summary judgment here, Plaintiff must provide affirmative evidence supporting any factual allegations that Copart (or some other entity) utilized an automatic dialing system, automatic dialing equipment not presently used for that purpose, or an artificial/prerecorded voice on each of the calls allegedly placed or directed by Copart: "8/6/2015 at 10:34am from 770-389-3853 (caller ID "Copart"); 8/10/2015 at 1:35pm from 817-504-6171 (caller ID "J SYLVESTRE CAR"); 8/10/2015 at 1:36pm from 817-504-6171 (caller ID "J SYLVE9STRE CAR"); 8/10/2015 at 1:47pm from 817-504-6171 (caller ID "J SYLVESTRE CAR"); 8/10/2015 at 1:50pm from 972-263-0877 (caller ID "NRTH TX SALVAGE"); 8/11/2015 at 10:42am from 800-824-9392 (caller ID "UNAVAILABLE"); 8/11/2015 at 10:56am from 800-824-9392 (caller ID "UNAVAILABLE"); 8/11/2015 at 4:05pm from 469-774-4119 (caller ID "Cell Phone TX"); 8/11/2015 at 5:42pm from 469-774-4119 (caller ID "Cell Phone TX"); 8/12/2015 at 11:37am from 469-774-4119 (caller ID "Cell Phone TX"); 8/12/2015 at 1:19pm from 469-774-4119 (caller ID "Cell Phone TX"); 8/12/2015 at 1:19pm from 469-774-4119 (caller ID "Cell Phone TX")" (Dkt. #52 at 3). *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 275 (5th Cir. 1987) (finding grant of partial summary judgment for defendant and against plaintiff was proper where reasonably factfinder could not find in favor of plaintiff at trial); *see Wood v. GC Servs., LP*, No. 8:10-CV-1979-T-27TBM, 2012 WL 987761, at *9 (M.D. Fla. Jan. 26, 2012), *report and recommendation adopted in part, rejected in part*, No. 8:10-CV-1979-T-27TBM, 2012 WL 995207 (M.D. Fla. Mar. 23, 2012) (finding plaintiff's TCPA violation claim failed where defendant proffered evidence that call facility did not have automatic dialer system technology at the time of the alleged calls and plaintiff offered no evidence to refute that evidence); *Dennis v.*

*Reg'l Adjustment Bureau, Inc.*, No. 09-61494-CIV, 2010 WL 3359369, at *3 (S.D. Fla. July 7, 2010) (granting summary judgment where defendant provided records supporting position that calls not made with an automatic dialing system or pre-recorded or artificial voice and plaintiff provided only her speculative and unsubstantiated testimony to refute defendant's evidence); *Clayton v. Aaron's Inc.*, No. 3:13-CV-219, 2013 WL 3148174, at *3 (E.D. Va. June 19, 2013) (granting motion to dismiss on TCPA claims where plaintiff did not make sufficient factual allegations relating to general context, number, timing, or phone number that plausibly show that defendant was using autodialing rather than manual transmission of message).

Having reviewed his Second Amended Complaint, Plaintiff alleges only that calls from DONATE THAT CAR used a pre-recorded message or an automatic dialer: "It is the Plaintiff's belief that all 12 of the calls from 214.416.8200 used a pre-recorded message . . . . The auto-dialed nature of the calls was evident . . ." (Dkt. #24 at 4).[10] The only caller ID associated with the phone number 214-416-8200 is Donate that Car (V4V1) (Dkt. #24 at 3-4). No allegation exists that the calls Plaintiff received from August 6 to August 12 used a pre-recorded message or an automatic dialer (*see* Dkt. #24). Further, no evidence exists in the summary judgment record to support an assertion that a pre-recorded message or an automatic dialer was used in any of the calls, including specifically those from August 6 to August 12 (Dkt. #24). Indeed, the Affidavit of Paul Styer clearly reflects the August 6 call did not utilize pre-recorded messages or automatic dialers (Dkt. #31, Exhibit A at 2), and a review of the Lot Notes makes clear the calls from August 10 to August 12 also did not utilize pre-recorded messages or automatic dialers (Dkt. #54 at 14-21). The Lot Notes make clear Copart and/or the other entities did not initiate calls to Plaintiff using pre-recorded messages or automatic dialers; the Lot Notes include

---

[10] These calls are listed as calls #1-#7 and #20-#24 in the Magistrate Judge's report and recommendation (Dkt. #52 at 3).

multiple entries indicating Plaintiff was personally contacted: "call[ed] owner myself and had to leave message on voicemail" and "spoke with owner Geroge Barr and he stated that the vehicle is cleared for pickup" (Dkt. #54 at 19-20). This evidence suggests that the callers did not use pre-recorded messages or automatic dialers when initiating calls to Plaintiff. In sum, Plaintiff has proffered no evidence to refute Paul Styer's affidavit, and Plaintiff's own evidence, the Lot Notes, further advances that none of the calls from August 6 to August 12 utilized pre-recorded messages or automatic dialers. Moreover, as discussed *supra*, Defendant rejects Plaintiff's assertion that he has produced any audio recordings evidencing the use of prohibited telemarketing techniques (Dkt. #57 at 7) and no such recordings are before the Court (as discussed *supra* note 3). Because there is insufficient evidence that Copart or other entities under its direction or acting on its behalf initiated any calls using an artificial or prerecorded voice, summary judgment is appropriate on Plaintiff's ATDS claims against Copart based on the calls from August 6 to August 12. *Marshall*, 2014 WL 12561626, at *3.

### ii. DNCL

Summary judgment is also appropriate on Plaintiff's DNCL claims against Copart because Plaintiff cannot raise a genuine issue of material fact regarding whether the following calls constituted a telephonic solicitation: "8/6/2015 at 10:34am from 770-389-3853 (caller ID "Copart"); 8/10/2015 at 1:35pm from 817-504-6171 (caller ID "J SYLVESTRE CAR"); 8/10/2015 at 1:36pm from 817-504-6171 (caller ID "J SYLVE9STRE CAR"); 8/10/2015 at 1:47pm from 817-504-6171 (caller ID "J SYLVESTRE CAR"); 8/10/2015 at 1:50pm from 972-263-0877 (caller ID "NRTH TX SALVAGE"); 8/11/2015 at 10:42am from 800-824-9392 (caller ID "UNAVAILABLE"); 8/11/2015 at 10:56am from 800-824-9392 (caller ID "UNAVAILABLE"); 8/11/2015 at 4:05pm from 469-774-4119 (caller ID "Cell Phone TX");

8/11/2015 at 5:42pm from 469-774-4119 (caller ID "Cell Phone TX"); 8/12/2015 at 11:37am

from 469-774-4119 (caller ID "Cell Phone TX"); 8/12/2015 at 1:19pm from 469-774-4119

(caller ID "Cell Phone TX"); 8/12/2015 at 1:19pm from 469-774-4119 (caller ID "Cell Phone

TX")" (Dkt. #52 at 3).  The TCPA imposes liability on callers engaging in telephone solicitations

with residential telephone subscribers who register their names on the federal do not call registry.

47 U.S.C. § 227(c).  Notable here, the term "telephone solicitation" in the TCPA means "the

initiation of a telephone call or message for the purpose of encouraging the purchase or rental of,

or investment in, property, goods, or services, which is transmitted to any person, but such term

does not include a call or message (A) to any person with that person's prior express invitation or

permission, (B) to any person with whom the caller has an established business relationship, or

(C) by a tax exempt nonprofit organization."  47 U.S.C. § 227(a)(4) (emphasis added); 47 C.F.R.

§ 64.1200(f)(14); *see Freyja v. Dun & Bradstreet, Inc.*, No. CV147831DSFMRWX, 2015 WL

6163590, at *2 (C.D. Cal. Oct. 14, 2015), *appeal dismissed* (Feb. 11, 2016) (finding call to

acquire information, where defendant did not market or attempt to sell anything to plaintiff, was

not a telephone solicitation).

### a.  Consent

The FCC has stated that "persons who knowingly release their phone numbers have in

effect given their invitation or permission to be called at the number which they have given,

absent instructions to the contrary."  *In the Matter of Rules & Regulations Implementing the Tel.*

*Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752 (1992); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d

716, 730 (S.D. Tex. 2012) (noting FCC ruling); *Murphy v. DCI Biologicals Orlando*, LLC, No.

6:12-CV-1459-ORL, 2013 WL 6865772, at *9 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d 1302

(11th Cir. 2015) (granting motion to dismiss on DNCL Violations where plaintiff provided

phone number on new donor information sheet and therefore provided invitation or permission to be contacted at that number). Plaintiff advised Donate that Car (V4V1) that he desired to donate a vehicle and thereby provided an invitation and/or permission to be contacted for the purpose of completing the donation of the vehicle. *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14); *Murphy*, 2013 WL 6865772, at *9 (dismissing where plaintiff provided contact information on new donor information sheet, where defendant had contacted plaintiff for purpose of encouraging future blood donations). Each of the calls from August 6 to August 12—being August 6, 2015 at 10:34am; August 10, 2015 at 1:35pm, 1:36pm, 1:47pm, 1:58pm; August 11, 2015 at 10:42am and 10:56 am; August 11, 2015 at 4:05pm and 5:42 pm; and August 12, 2015 at 11:37am, 1:19pm and 1:19pm—clearly shows, based upon review summary judgment record, including the Lot Notes (as discussed more fully *supra* section II(A)(ii)), that they were made for the purpose of scheduling pickup of Plaintiff's imaginary vehicle (Dkt. #54 at 18-21). There is no evidence in the summary judgment record to the contrary showing that Plaintiff either instructed V4V1 not to contact him and/or that he denied permission to call him at 972-943-9799. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752 (1992). Accordingly, the Court finds that Plaintiff consented to those calls received from August 6 to August 12.

### b. *Business Relationship*

In addition, the Court finds Plaintiff had also established a business relationship which permitted Copart (or other entities) to contact Plaintiff about the vehicle until Plaintiff severed the business relationship. To reiterate, the term "telephone solicitation" does not include a call "to any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14)(ii); *cf. Texas v. Am. Blast Fax, Inc.*, 159 F.

Supp. 2d 936, 940 (W.D. Tex. 2001) (finding TCPA violations when defendant sent numerous intrastate faxes without the recipients' invitation and without having an established business relationship). Section 227(a)(2) of the TCPA looks to section 64.1200 of title 47, Code of Federal Regulations to define the term "established business relationship." And an "established business relationship" for the purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity. 47 C.F.R. § 64.1200(f)(5). Plaintiff's own evidence establishes that Plaintiff provided a customer service representative for "Donate that Car" (V4V1) with a false address, vehicle information, and other donation-related information during the August 5, 2015 call and "set up a time to find out who was making the calls" (Dkt. #24 at 4), after which Plaintiff received calls from Copart and/or various other entities seeking to pick up the vehicle (Dkt. #24 at 4-5; Dkt. #54 at 18-21). The Lot Notes make clear each call placed—on August 6, 2015 at 10:34am; August 10, 2015 at 1:35pm, 1:36pm, 1:47pm, 1:58pm; August 11, 2015 at 10:42am and 10:56am; August 11, 2015 at 4:05pm and 5:42 pm; and August 12, 2015 at 11:37am, 1:19pm and 1:19pm—was solely for the purpose of coordinating pickup of the vehicle (as discussed more fully *supra* section II(A)(ii)), which Plaintiff advised on August 5 that he desired to donate (Dkt. #24 at 4).

Another federal court has recognized behavior analogous to Plaintiff's here as establishing a business relationship, thus excusing liability for subsequent calls. *Hamilton v. Spurling*, No. 3:11CV00102, 2013 WL 1164336, at *10 (S.D. Ohio Mar. 20, 2013). In *Hamilton*, the trial court entered judgment after a bench trial finding the plaintiff did not prove his TCPA claim under 47 U.S.C. §227(c). *Hamilton*, 2013 WL 1164336, at *10. In *Hamilton*,

the plaintiff received calls attempting to solicit chiropractic services for his wife after her involvement in an automobile accident. *Id.* In one series of phone calls, a representative for Chiropractic Therapy West called the plaintiff to see if plaintiff's wife was interested in setting up an appointment with a chiropractor, Dr. Scott Bruce. *Id.* at *2. Plaintiff's wife set up an appointment through the representative, but did not show for her appointment; Plaintiff testified that his wife set up the appointment solely for the purpose of identifying the chiropractor's name. *Id.* at *3. After the plaintiff's wife did not show for her appointment, the chiropractor asked the representative to place a followup call. *Id.* During the followup call, the plaintiff's wife scheduled a second appointment, which she also did not attend. *Id.* After the plaintiff's wife did not show up for the second appointment, the representative called the plaintiff's wife two more times. *Id.* The Court held that by acquiescing to the caller's request in the initial telephonic solicitation and setting up an appointment, the plaintiff entered into an "established business relationship," and thus the remaining calls in response to the plaintiff's missed appointments could not meet the definition of a "telephonic solicitation." *Id.* at *11. Plaintiff's false affirmation that he had a vehicle to donate established a business relationship, excusing subsequent calls made in furtherance of that business relationship and for the stated purpose of that relationship—to effectuate Plaintiff's donation of a car. Moreover, notably the calls from Copart and/or the entities trying to pick up the vehicle ceased as soon as Plaintiff advised "he never had any intentions on donating vehicle, that it was all a joke" (Dkt. #54 at 20).

Even by viewing the evidence in the light most favorable to the Plaintiff and attributing the calls Plaintiff received from August 10 to August 12 to Copart, Plaintiff remains unable to establish either an ATDS or DNCL violation with respect to the August 10 to August 12 calls. Accordingly, the Court overrules Plaintiff's objections, and finds summary judgment is proper as

to each of Plaintiff's **ATDS** and **DNCL** claims against Copart for the following calls: August 6, 2015 at 10:34am; August 10, 2015 at 1:35pm, 1:36pm, 1:47pm, 1:58pm; August 11, 2015 at 10:42am and 10:56am; August 11, 2015 at 4:05pm and 5:42 pm; and August 12, 2015 at 11:37am, 1:19pm and 1:19pm.

## CONCLUSION

Having received the report of the United States Magistrate Judge (Dkt. #52), having considered each of Plaintiff's timely filed objections (Dkt. #54), Defendant's Response (Dkt. #57), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #52) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #31) is **GRANTED**, and each and every of Plaintiff's claims against Defendant Copart are **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

**SIGNED this 9th day of November, 2016.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE